, case number 24-2196. Thank you. Good afternoon. Good afternoon, your honors. Robert Fantone for Mr. Santos. I have a colleague, Andrew Mancia, sitting by me. I'd like to start the discussion today on the transformative prong of fair use. I think my friends on the other side here, we all agree on the law that applies here. The court has to determine the character and purpose of the original works and compare it to the character and purpose of the secondary use to determine if there was a transformative or different purpose. And in doing so, the court is to use an objective standard, the reasonable observer standard. That being said, that's not what the court did here. So I'll direct your honors to page 12 of the district court's decision where the court says it makes the finding that the FAC, first amended complaint, asserts that Santos created the videos to generate an inspiring message. The court is using a subjective standard to determine the character and purpose of the original works. The court's just quoting the complaint, right? She's quoting the complaint. But again, there's no discussion of reasonable observer. There's no discussion of what a reasonable observer would interpret the cameo's purpose to be. There's no discussion of that. And that actually is the proper standard. Now- She should disregard the complaint's characterization of the statement of the work? There are two responses to that. One, it doesn't have to be completely disregarded. It has to be factored into an analysis of what a reasonable observer would interpret the work to be. So it's improper for her to take, if you want to use the word, an admission or a suggestion of what Mr. Santos's actual intent was. That is irrelevant to the analysis. It's what a reasonable observer, just looking at the cameos, the four corners of the cameos, watching the original work, what does a reasonable observer interpret those to be? And now, obviously, it's a de novo review, so it's up to your honors to make that determination. I submit to you that a reasonable observer would have to interpret the purpose and character of the cameos to be satirical. Again, just observing, I mean, they're absolutely ridiculous. To pose this question, I don't know if one of your honors or more laughed when you watched these cameos. I know I laughed at them. It was the whole purpose, specifically to get people to laugh at Mr. Santos for saying ridiculous things for money. So why is saying the complaint that it was something different? The complaint describes Mr. Santos's intent to some respect with making an inspiring message. I don't know that that's a different meaning. I don't know that that's a different meaning. And frankly, to characterize the totality of what his intent was with, like, one sentence. Your complaint. I mean, so in the complaint, did you characterize it as a satirical, self-deprecating message? We did not. No. But again. But we should fault the district court for not doing that when you didn't do it. Well, we're not required to do it. And truthfully, it's irrelevant because it's an objective standard. His intent, even for the purposes of your honors argument, if that was his intent through and through, the case law is clear that his intent is irrelevant. I'll read from page 16 of the appellee's brief citing the Supreme Court in Warhol. I know the standard. Okay. I'm just surprised by this argument. Not only am I surprised by the argument, but it seems to, I'm reading your brief. It says on page 11, while we agree with the district court's assessment of what a reasonable observer, quote unquote, would understand the purpose of appellee's secondary use of the words to be. And that seems to contradict what you're saying to me or to us right now. On de novo review, your honor, I think if you look at the cameos, a reasonable observer is going to interpret them to be satirical. Well, maybe I missed the difference. That's a separate argument from the argument you started out with. So you're saying not that the district court didn't assess, didn't make the assessment of what a reasonable observer would understand the purpose of the secondary use was. But that if we look at it on de novo review, is that what you're saying? I'm referring to the original purpose. I actually think that everyone agrees on the purpose and character of the secondary use. I don't think there's any disagreement on that at all. I'm focusing on the purpose and character of the original works. Which you're saying is the same as the secondary works. Yes, I believe that is. It can't be transformative in that way. It's not transformative. I mean, look at the cameos. Mr. Santos is congratulating a furry for being permitted to wear a beaver puss outfit to work and making the sounds yiff yiff. Okay, he congratulates another lady for successfully cloning a dog named Adolph. These are ridiculous on their face. And to find as a matter of law at the pleading stage that a reasonable observer doesn't interpret those to be satirical, I think is wrong. I think it's unsupported by the record. And as your honor pointed out, if the original purpose is satirical, and we agree that the second purpose, character and purpose, was satirical, it's not transformative. I'd like to talk a minute as well about the. I understand. No for review. You were saying that we would. It would be very clearly the case that the as a matter of original use. These videos were intended to demonstrate the willingness to say absurd things for money. Is that right?  I mean, that is the purpose of cameo. And just to make the point again, it's not necessarily inconsistent with making an inspiring message. Those two things can happen at the same time. Okay, Mr. Santos can make fun of them. Inspiring message that an objective observer would take away from these cameos. That he can laugh at himself, that would inspire me to go do great things for America. Sure. Sure. The problem is it's not in your complaint, Mr. Vantone. You signed this complaint. I mean, it just seems like this is a new theory that is going to get you over problems that are identified by the district court. I frankly disagree because the subjective intent is irrelevant to the analysis. So what's in the complaint, what's pled in the complaint really is of no significance. What does a reasonable observer understand the works to be when they look at it? That's up to your honors to determine. We could have pled whatever his intent was. It's irrelevant under the law. I just want to talk. Yeah. Maybe I'm asking the same question that Judge Sullivan asked. Not only is it maybe not in your complaint, but it seems to contradict an allegation that, quote, the works were created by Santos using his own effort, creativity, and unique personality traits to generate an inspiring message and convey his feelings of hope, strength, perseverance, encouragement, and positivity. Original, according to the complaint. And then you agree that the secondary use is a reasonable observer would understand that the videos comment on the willingness of Mr. Santos to say absurd things for money, which is totally different. I think maybe I'm missing something here. Your honors keep referencing a subjective intent of Mr. Santos, which by law is irrelevant to the transformative analysis. No, no, no. This is a motion to dismiss. We're required to accept the pleadings as true. Right. So you can accept as true the fact that Mr. Santos's intent was as stated. It's irrelevant to the objective standard that a reasonable observer would look at. Yes. Then clearly the purposes of the primary and secondary use are different. Right. I would disagree because you have to use an objective standard in determining what someone that watches the cameo, how are they going to interpret it? And it's and it's satirical. Let me add one more point as well. If we're going to look at actual purpose in the pleadings, it's also pled that Mr. Kimmel actually assisted in the creation of the works by writing the scripts. His intent was undoubtedly to make Mr. Santos look like a fool for saying these things for money. He assisted in the creation of these works. He wrote the scripts that Mr. Santos read. So I don't think it's fair to just isolate Mr. Santos's intent when analyzing the original purpose when Mr. Kimmel also assisted in that. So would you agree that a reasonable assessment or objective assessment of use hinges on context? The original or the secondary purpose? Either use hinges on context. Sure. So if one context is serious, inspiring, I love X, Y, and Z. And then that context using the same message is used for a very different purpose to mock X, Y, and Z.  Would you agree that that's potentially arguably transformative? Arguably. But I mean, if you look at the cameos. Regardless of, well, hold on. So you can have the same video, same video, same audio, whatever it is, whatever data exists, have two very different meanings depending on the context in which they're presented. Certainly, that's true. Why isn't that true here? Because you're saying that we can't, as a matter of law, view those in different contexts. One, serious. One, a subject of parody and comedy. I'm not saying you can't. I think any reasonable person that watches those videos, because of how ridiculous they are, is going to understand them to be satirical on their face. So you've reserved some time for rebuttal. Thank you. We'll hear from Mr. Siegel. Thank you, Your Honors. Good afternoon. I think I'll start by addressing the argument that was made here, which I'll point out simply, and I'll get to this because it's wrong on the merits, but it completely contradicts the theory of the case up to this point. I mean, all the district court did was simply, the district court applied the correct test. The district court just concluded that the purpose of the second work, as it was pled in the complaint, is consistent with that test. And if you think about what is now being argued, the whole premise of this case, including, for example, all of their state law claims, and I'm reading right from their opening briefs. Relying on the appellee's misrepresentations about their identity and intended use, Santos created the requested videos. Well, as I understand, what they're now arguing is Mr. Santos didn't rely on anything, that he thought these were absurd and, you know, somehow on their face. So it just, it contradicts everything that they have argued up to this point. And secondly, even if you were to set that aside, it's not plausible on the merits. I mean, the purpose of Mr. Kimmel's segments, I think it's undisputed, was to comment on what the videos reflect about Mr. Santos' greed. No reasonable observer looking at the first videos in isolation would conclude that that was their purpose. It simply doesn't make sense. And so, and their argument takes the subjective intent point even further. They want to argue that somehow Mr. Kimmel's motives for commissioning the work in the first place are part of the transformative test. Well, that is not, and it cannot be. People commission works for all kinds of reasons. You could have somebody, for example, who really dislikes abstract art, and so they go out and they commission a work. And the real reason they commission a work of abstract art is they want to make fun of the genre. Well, let's go there.  It seems to me that that's a decent point for the contract claim. Because the district court concluded that the contract claim was preempted by the copyright claim in the fair use defense of the Copyright Act. But the Copyright Act doesn't extend, I don't think, to the commissioning of works. It only extends to the reproduction of works. And so if there's a contract that falsely states who it is that's commissioning a work, why isn't that a valid contract that's not preempted? It's, I'll take that as two questions. One, why isn't it a valid contract? And then two, why wouldn't it be preempted even if it was? It's not, I'm sorry. Well, I mean, I guess the focus is why is that covered by Section 106 of the Copyright Act? Well, to address that first, it's covered by Section 106 because the case law is you look at state law claims holistically. It's not a mechanical task. But this is commissioning. I mean, at least part of the contract claim is the breach of the contract was misrepresenting who the commissioning party was. Yes, that's right. And so if that is what happened, why is that preempted? Because the damages that are sought from that claim are simply the damages for the alleged unauthorized use that resulted from that transaction. So let me, so that's a good point. I want to come back to that. But so just if I have a hypothetical, if somebody wants to mock Kid Rock and Donald Trump and so commissions a work lauding Donald Trump, but they make a false representation about who they are. They mean that they're the RNC. In fact, they're a different party altogether. So Kid Rock could then, in that case, sue for a breach of contract if he expended money in a recording studio, in hiring musicians, in promoting the work. You would agree then that that would be a valid contract that's not preempted? Well, first of all, I don't agree that it would be a valid contract unless there was a contract to make accurate representations. If it had language like this one, which was that you cannot falsely represent who you are, you have to disclose your true identity. But the language that was at issue here was part of an agreement between Cameo and the user. That's your third party beneficiary. Yes, that's right. I get that. And that might be a valid way to get around this. Yes. For my hypotheticals, and you're not ruling out that a false commissioning with a contract that requires candor could be a contract claim. It could be. It would depend on the totality of what the claim was doing. We have cited a number of cases here that we think are analogous to this one, whether it was a fraud or a contract claim, where the claim was based on an underlying misrepresentation about identity or purpose, but the damages were, you made an unauthorized use and I want damages for that unauthorized use. And that's what we're saying is the basis of the preemption. So I guess related to this, but to the copyright claim is whether Harper and Roe is still good law or is there a line that this doesn't get up to. So Harper involves the purloining of a manuscript. And so this I mean, why is this not worse than purloining where it's an actual deception or a fraud? Well, there are a couple of reasons for that. The fundamental reason is that the issue in Harper and Roe, and this is what all the case law, including this court's case law, especially in the NXIVM case and in Bloomberg versus Swatch. Well, I agree. They're walking away from Harper and Roe, but I think they're still kind of stuck with it. Well, I think they're not walking away from it in this respect. What they're saying is Harper and Roe is looking at a specific situation where there was an enormous offense to a fundamental interest, which is protected by copyright itself, which is the ability to exploit a work in the first instance. That was the effect of what happened in Harper and Roe. In subsequent cases, and that's not an issue here. I mean, that's not even plausibly an interest here. In the subsequent post-Harper and Roe cases, I think what the cases are saying is not that means nothing. What they're saying is that shouldn't be read to suggest that there was some all-encompassing sort of bad faith requirement that somehow trumps the first factor test. And if you look at specifically what those cases were addressing, like NXIVM and Bloomberg, they're addressing scenarios that are not all that different here, right? The allegation, for example, in the NXIVM case was that the defendant had tortiously interfered with the plaintiff in order to obtain, per loin, right, a copy of the manual that was at issue. But the court held in that case that generally bad faith contributes little to the analysis. Judge LaValle has suggested it shouldn't be considered at all. But even Judge LaValle's article, the Harper article, does talk about how, well, there may be criminal or tort actions that would be appropriate for those types of frauds, right? Well, NXIVM was an alleged tort. I mean, literally, it was an alleged tort. It was tortious interference instead of fraud. And what the court said is that, look, where you have a situation like this, which is not the case in Harper and Rowe, right? Harper and Rowe was literal copying. It wasn't transformative. When you have a transformative use, which in NXIVM, as in here, was specifically for the purpose of criticizing the plaintiff's work, that kind of bad faith has little to contribute to the analysis in some way. So just by this theory, I just want to be clear on this. So if before hitting send, Mr. Santos figured out, oh, this is Jimmy Kimmel. This is not Bob or whoever, and doesn't send it. And so Jimmy Kimmel then hires somebody to break into his home and steal his laptop and extract it from the laptop. Your view is that that still would be irrelevant to the fair use analysis. Is that right? That would present a different case. Gunpoint robbery. How about that? It would be a harder case than some of the fact patterns that are presented here. But if you look at the fact pattern. I don't know why you're not comfortable saying that's correct. What's that? I don't know why you're not comfortable saying that's correct. Because I think it is difficult to make sweeping generalizations about every single scenario. But if you look at this case, you know, the district court found quite properly that there was no fraud here. So it seems odd to take a case where the court found there is no fraud court, period, tort, period, even as a matter of state law, which arguably has the most direct interest in policing this kind of activity, and conclude that somehow the Copyright Act has this all-encompassing interest in policing whether or not misrepresentations or tortious interference are made. Let me go back. So that's on fair use, but let me go to the preemption question that I think maybe you're going to start to answer, which is that insofar as there is a theory with respect to the breach of contract claim, that the breach was by or related to or rested on the use of false information. Yes. How does that overlap with the Copyright Act? Because it seems to me that that's not an act of reproduction. That's not the classic types of things, particularly in the video context, that we would view as a copyright claim. Do you understand that question? Yes. No, no, I do. And if the court will allow me, I know my time is over. Can I give a two-part answer to that? Two-part, okay. Yes. Number one is with respect to the Copyright Act, yes, there is an element there, right, in a sense of that theory that is not part of the Copyright Act, but the fundamental damages that are sought, the wrong that is sought to be remedied in the complaint. Am I looking at the – and I'm sorry, I'm interrupting your first part, but am I looking at the damages or the relief or am I looking at the claim itself? Well, the relief is part of the claim, and what the case law has said, that in a situation where a state law theory is being used simply to seek to recover, in this case, damages from an unauthorized use, right, that that claim is preempted. It's not qualitatively different from a copyright claim. The second part of my answer, though, which I think is equally important, and the district court didn't reach this issue, is that whether you characterize it as an express contract or an applied contract, right, on the merits, there is nothing pled, any exchange between Mr. Kimmel and Mr. Santos, where Mr. Santos said anything – I'm sorry, Mr. Kimmel said anything about, oh, let's agree that I'm going to provide you accurate information or anything like that. There is, on the merits, the district court didn't reach this issue because it concluded it didn't have to, but we certainly raised it below. On the merits, there is no basis for an offer of such a contract or an acceptance of such a contract. It simply doesn't exist. Obviously, you think that we should reach that if we agree with you. If you were to disagree with the district court on preemption, yes, we think it would be appropriate to reach that issue, which was certainly raised below, because you can affirm on any ground as long as it was raised below. I'm going to ask your friend on the other side in a minute, but, I mean, in terms of supplemental jurisdiction, nobody's disputing that the district court would have supplemental jurisdiction, as would we for the contract and fraudulent inducement claims. Yes, I think that's right. I'm not even sure. I'd have to go look at the list of defendants as to whether there would even be diversity – I mean, whether there would be diversity jurisdiction, in other words, that it wouldn't even necessarily purely be on the basis of supplemental jurisdiction. But, yes, I think the district court clearly would have had supplemental jurisdiction, and it strikes me as a case where it would be appropriate to exercise that, rather than allowing the dispute to continue. Thank you. Thank you. I'm on. Was there a question? Well, I mean, I guess I don't think you asserted diversity jurisdiction, not in your complaint. I don't believe so, Judge. It's a federal issue. And so, in other words, if we agree on the Copyright Act claim and then we've got to get to the state law claims, I mean, I don't think you have ever asserted or suggested that the district court shouldn't exercise supplemental jurisdiction to reach those other claims. We haven't made that assertion, no, and we've relied on just the pendant jurisdiction to address those claims at this point. To talk a bit about preemption, I see that your honors are seeing the distinction in the qualitative nature of the claim. And I agree, or I would submit, that just if there's an overlap in damages, that doesn't automatically mean that the claim is preempted. And, in fact, the case that the court relies on in making this finding is Melendez. And if you look at Melendez, that was a Second Circuit decision. It does a pretty good job of explaining the difference between what a state law claim, how it might be seen as preempted. And in that case, it was a state likeness claim, which really is not much different than what we have here, even though it's a breach of contract. But you're only seeking, it seems to me, the delta between the commercial license and the personal license, right? I think the pleading states had a minimum. You know, there would also be theoretically reputational harm associated with it, although. Well, I'm not sure of the reputational harm. I mean, a minute ago, you just said that both works had the same intent. Right, right. Just to show his wacky intelligence. I agree. I agree. But if you look at Melendez, which also cites Jackson, which is another Second Circuit case, what they're saying is if the state law claim is seeking, really, to control the distribution and revenue streams from the copyrighted content, that falls more in line with what would be preempted under copyright law. On the other hand, if you have a claim like, I think, this breach of contract claim, which is seeking, really, just to address the violation of the agreement, that really is disfavorable towards preemption. It shouldn't be preempted. Okay? Well, if all you're saying is that Kimmel used this license in a way that wasn't permitted, so he effectively then infringed on copyright, why wouldn't it be preempted? No. That's not what we're saying. The violation, as described in the complaint, is the misrepresentation of his identity. Okay. So what's the damage that comes from that? Well. It seems to me the only thing you're saying is that it prevented him from extracting the higher rate for a commercial license. That's right. Well, if that's the case, though, that really then is just a copyright damage, right? There's also nominal damages, I think, to an extent, with reputational. And the complaint pleads a request for disgorgement, which is an equitable remedy. So there is alternative relief. Could you just very, very briefly address the argument from your friend on the other side, which is really a third-party beneficiary argument? Right. There is no contact between Mrs. Kimball and Mrs. Santos? Very briefly, twice. Onto your Honor's last point. There's no pricing in the terms of service. So there is contact between the two of them in negotiating what license he's going to select, or they can come up with their own, and the price of those. So there is some, and that's really the basis for the pleading of the implied contract. Okay. But to answer your Honor's first question, if you look at Section 3D, that's in A68, and I understand that that applies to business cameos. Hold on, hold on. 3D? Okay. 3D on A68 of the record. It's talking about business cameos. It does say any information has to be accurate. That's in Point 2. And if you look down at the bottom in Subdivision F, it expressly mentions talent user, which in this case is Mr. Santos, as an intended third-party beneficiary. Now, to give my friends over here the benefit of the doubt with their argument, they argue because this wasn't actually a business cameo, these provisions don't apply. And in response to that, I'd say go back one page to A67, and if you look at the very top of the page, it's the beginning of Section 1, which the heading is actually on the previous page. Okay. By creating? But there's an obligation there to avoid using false identity and false information in connection with creating the site account, which was breached here. And if you look further down on that page at Section 2B, here's the key language. And, again, we're using Illinois law with respect to the third-party beneficiary as argued by the appellees. Okay? Really, I don't think there's a distinction between Illinois state law and New York state law. I'm glad to hear that because I have no idea what Illinois is. Okay. In both law, you know, it doesn't have to be expressed like it was in the previous example. You just have to ascertain from reading this if it's designed to benefit a third party. And here, if you look at the language, the talent user has the sole discretion, I'm reading from the first sentence in Sub B, to determine how to fulfill the request. And if you look down at the third sentence, the talent user has up to seven days to fulfill or decline the request. So it's describing the rights of the talent user right here. So that's the argument. That's the argument as to why it would be a third party. Thank you very much. Thank you, judges. We'll reserve a decision.